RODGERS, United States Commissioner of Immigration, v. UNITED STATES
ex rel. CACHIGAN.

(Circuit Court of Appeals, Third Circuit. November 25, 1907.)

No. 8.

1. ALIENS—REGULATION OF IMMIGRATION—MATTERS SUBJECT TO JUDICIAL IN-
QUIRY.

Congress has plenary power to exclude aliens from entry into the
United States, or to provide for their admission subject to such restric-
tions as it may prescribe; and, where it has given discretionary power
to executive officers or agencies to determine the right of entry under such
restrictions, the ground of such determination cannot be inquired into by
the courts in habeas corpus proceedings instituted by an alien, who is
restrained of his liberty for the purpose of deportation by such officers.
The question, however, whether the law does vest such officers with
power of final decision is necessarily one for judicial inquiry, and an alien
given by the law a right of appeal may invoke the powers of a court for
the enforcement of such right.

2. SAME—CONSTRUCTION OF STATUTE—"FINAL" DECISION.

In the provision of section 10 of the immigration act (Act March 3,
1903, c. 1012, 32 Stat. 1216), making the decision of the board of special
inquiry based upon the certificate of the examining medical officer final
as to the rejection of aliens affected with a loathsome or dangerous conta-
gious disease the word "final" is not used in such broad sense as to deprive
an alien so rejected of the right of appeal unqualifiedly given by section
25 of the act, or of the right to invoke the provisions of section 37,
relating to the wife and children of a naturalized alien, in a case to
which such section is applicable.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 3, p.
2772; vol. 8, p. 7663.]

Appeal from the District Court of the United States for the Eastern
District of Pennsylvania.

Jasper Yeates Brinton and J. W. Thompson, for appellant.
David Phillips, for appellee.

Before DALLAS, GRAY, and BUFFINGTON, Circuit Judges.

GRAY, Circuit Judge. This is an appeal from the decision of a
judge of the United States Court for the Eastern District of Pennsyl-
vania, in proceedings under a writ of habeas corpus, sued out by the
next friend and father of the relator against the appellant, whereby
the relator was discharged from the custody of the respondent to said
writ, the appellant here, upon the father of said relator entering bond
without surety in the sum of $100, conditioned for the appearance
of said relator at the District Court, upon the determination of any
appeal that should be taken by the said respondent.

The relevant facts appearing in the record are these: The father
of the relator, Hagop Cachigan, a native of Armenia, who had resided
in this country for a number of years, and during that time was a resi-
dent of the city of Troy, New York, had been naturalized on the 8th
of May, 1905. In 1906, in order that his wife and children might join
him in this country, he sent to his wife money to defray the expenses
of their journey. She embarked at Liverpool with the relator, her
son about eleven years of age, an older son having been detained at

that port on account of eye trouble. On their arrival at the port of Philadelphia, July 22, 1906, the board of special inquiry provided for by the immigration laws of the United States, and hereinafter more particularly considered, to whom the case had been referred, voted to continue the case of the mother and exclude the boy. This action of the board, as stated by them, was based upon the certificate of the examining medical officer, which was as follows:

"Medical Certificate.

"Port of Philadelphia, Pa.

"Commissioner of Immigration—Sir: I hereby certify that Donabed Cachigan, age 12, native of Armenia, who arrived July 22, 1906, per S. S. Merion, has Trachoma, a dangerous contagious disease of the eyes.

"July 24, 1906.　　·Tallaferro Clark, Surgeon in Charge of Medical Division.

"This condition could have been detected by competent medical examination at the port of foreign embarkation."

On August 2, 1906, a letter was written by counsel for the relator, to the appellant, John J. S. Rodgers, United States Commissioner of Immigration, stating the facts of the case as heretofore recited, and expressing the "desire to appeal from the decision of the board of local inspectors, on the ground that the 37th section of the act regulating immigration was intended to cover such cases as this." The letter is informal, but the United States district attorney, as counsel for the appellant, concedes, that if an appeal could lawfully have been entertained, the letter was sufficient notice of such appeal, under Act March 3, 1903, c. 1012, 32 Stat. 1213, to regulate the immigration of aliens into the United States. On the same day, the following answer was made to this letter:

"Department of Commerce and Labor.

"Immigration Service.

"Office of Commissioner, Philadelphia, Pa.

"No. 1423–B.　　　　　　　　　　　　　　　　　　　　　August 2, 1906.

"Messrs. Monaghan & Phillips, No. 18 S. Broad Street, Philadelphia, Pa.

"Sirs: I beg to return herewith appeal in the case of Donabed Cashigian, and to state that under Section 10 of the Act of March 3, 1903, no appeal can be entertained in such cases.

"Respectfully,　　　　　　　　　Jno. J. S. Rodgers, Commissioner, J. L. H."

The relevant portions of the act of March 3, 1903, are as follows:

"Sec. 2. That the following classes of aliens shall be excluded from admission into the United States: All idiots, insane persons, epileptics, and persons who have been insane within five years previous; persons who have had two or more attacks of insanity at any time previously; paupers; persons likely to become a public charge; professional beggars; persons afflicted with a loathsome or with a dangerous contagious disease," etc.

"Sec. 10. That the decision of the board of special inquiry, hereinafter provided for, based upon the certificate of the examining medical officer, shall be final as to the rejection of aliens afflicted with a loathsome or with a dangerous contagious disease, or with any mental or physical disability which would bring such aliens within any of the classes excluded from admission to the United States under section two of this Act."

Section 25 of said act, after prescribing how boards of special inquiry shall be appointed and constituted, proceeds as follows:

"Such boards shall have authority to determine whether an alien who has been duly held shall be allowed to land or be deported. All hearings before boards shall be separate and apart from the public, but the said boards shall keep complete permanent records of their proceedings and of all such testimony as may be produced before them; and the decision of any two members of a board shall prevail and be final, but either the alien or any dissenting member of said board may appeal, through the commissioner of immigration at the port of arrival and the Commissioner General of Immigration, to the Secretary of the Treasury (Secretary of Commerce and Labor), whose decision shall then be final; and the taking of such appeal shall operate to stay any action in regard to the final disposition of the alien whose case is so appealed until the receipt by the commissioner of immigration at the port of arrival of such decision."

"Sec. 37. That whenever an alien shall have taken up his permanent residence in this country, and shall have filed his preliminary declaration to become a citizen, and thereafter shall send for his wife or minor children to join him, if said wife, or either of said children, shall be found to be affected with any contagious disorder, and if it is proved that said disorder was contracted on board the ship in which they came, and is so certified by the examining surgeon at the port of arrival, such wife or children shall be held, under such regulations as the Secretary of the Treasury (Secretary of Commerce and Labor) shall prescribe, until it shall be determined whether the disorder will be easily curable, or whether they can be permitted to land without danger to other persons; and they shall not be deported until such facts have been ascertained."

It is not open to question, that the government of the United States, under the Constitution, is clothed with the plenary power accorded to national sovereignty by public law, to forbid the immigration of aliens entirely, or to admit them subject to such regulations and conditions as Congress may see fit to prescribe. Congress may exercise this power for any reason, or arbitrarily, without reason assigned or assignable. This absolute and plenary power is recognized by international law, as essential to national well being and self preservation. The power is political in its nature, and its exercise is not subject to judicial challenge or criticism. Congress may therefore prescribe whatever instrumentalities or agencies it may deem best for the enforcement of its laws respecting immigration. These instrumentalities and agencies may be executive and not judicial in their character, and, that the final determination of an alien's right to come into the country is confided to subordinate administrative officers, cannot be objected to or complained of by such alien. These fundamental principles are not contravened by the existence of the constitutional right of one who is restrained of his personal liberty, to the writ of habeas corpus. If the relator in such a suit be found to have been restrained of his liberty by the ministerial or executive officer upon whom the law has conferred the power of final determination and discretion in that behalf, the ground of such determination and discretion cannot be inquired into by the court or judge issuing the writ. In such case, the court will remand.

As a matter of fact, however, we find, upon examination of those parts of the immigration law above quoted, that though the power of final determination of the right of an alien to enter under the law, is reposed in executive and administrative officers, without any provision for judicial appeal, Congress has not neglected to provide some safeguards to the rights of aliens. Thus, in section 24, it is provided that

the so-called boards of special inquiry shall have authority to determine whether an alien, who has been duly held by an inspector, shall be allowed to land, or be deported, but that "either the alien or any dissenting member of said Board may appeal, through the commissioner of immigration at the port of arrival and the Commissioner General of Immigration, to the Secretary of Commerce and Labor, whose decision shall then be final," and it is provided that the taking of such appeal shall operate to stay any action in regard to the final disposal of the alien. Though the final determination of an officer clothed by the law with the right to so determine, may not be judicially questioned, the question whether the law confers such right of final determination, must be, of necessity, one for judicial inquiry. An alien can only be excluded or deported in strict accordance with the law in that behalf, and the mode, manner and agencies by which the exclusion or deportation denounced by the law is to be accomplished, must be strictly adhered to. Peremptory and drastic as our laws in this respect necessarily and properly are, the alien has rights of which he cannot be deprived, and for the assertion of which he may invoke judicial interference. If in the case before us, the relator had the right to an appeal from the decision of the board of special inquiry, and a suspension of any action in regard to his final disposal under such decision, pending such appeal, and that right was unlawfully denied him by the commissioner of immigration, that denial unquestionably rendered his further detention under the decision of the board of special inquiry illegal, and the learned judge of the district court was justified, on that ground, in concluding that the relator was held in unlawful custody.

It will be noted, however, that the commissioner's refusal to entertain the relator's appeal was stated to be on the ground that, under section 10 of the act of March 3, 1903, there could be no appeal in such cases. This contention was renewed by counsel for the appellant at the hearing, and must receive, as it deserves, our careful consideration. Referring to section 10, we find that it is provided that the decision of the board of special inquiry, based upon the certificate of the examining medical officer, shall be final as to the rejection of aliens afflicted with a loathsome or dangerous contagious disease, and it appears from the record that the decision of the board of special inquiry in this case was based upon such a medical certificate. The question therefore arises, is the word "final," in section 10, used in a sense so unqualified, absolute and uncontrolled as to be conclusive of the question here in controversy? Looking to section 25, we find the right of appeal given to the alien or any dissenting member of the board, is general and unqualified, and so far as the language of the section is concerned, is applicable to all cases, including those described in section 10. Those cases are not expressly excepted, but the contention of appellant's counsel is, that the finality attached by section 10 to the decision of the board in the cases therein described, works an exception itself to the universality of the language employed in section 25. This is a harsh and unsatisfactory conclusion at which to arrive, and ignores that rule of statutory interpretation by which various provisions of the same statute must, if possible, be so construed

as to be consistent. With this rule in mind, let us consider whether the meaning of the word "final," as applied to the decisions in the cases described in section 10, is necessarily such as to deprive the parties to such cases of the privilege of appeal expressly conferred upon them by the language of section 25.

Every lawfully made official or judicial determination of a question or controversy may be said to be final, as to the parties or subject-matter involved, so far as that officer or tribunal is concerned. The officer or tribunal is functus officio. No further hearing can be had. In this sense, every such decision or determination may properly be said to be final, even though there be a right to an appeal by the defeated party. Common parlance, as well as juridical usage, justifies this limitation of the word "final" in the connection above described. In view, then, of the unqualified language of section 25, by which the privilege of appeal is given in all cases, such a judicial interpretation of the word "final" in section 10, as would antagonize the plain meaning of section 25, should be avoided. But we do not rest here. An inspection of section 25 itself throws light upon the significance of the word "final," as used in the act. It says:

"And the decision of any two members of a Board shall prevail and be final, but either the alien or any dissenting member of said board may appeal, through the commissioner of immigration * * * to the Secretary of Commerce and Labor, whose decision shall then be final."

We conclude, therefore, that the word "final" in section 10 is used in this restricted sense, and does not deprive those who are parties to the cases described in that section, of the privilege of appeal so unqualifiedly conferred by section 25.

It is also worthy of notice that the amended act of February 20, 1907, c. 1134 (34 Stat. 907 [U. S. Comp. St. Supp. 1907, p. 406]), adds to section 25 this proviso:

"But nothing in this section shall be construed to admit of any appeal in the case of an alien rejected as provided for in section 10 of this Act."

While this, of course, shows that the exclusion of aliens rejected, as provided for in section 10, from the privilege of the appeal granted in all cases in section 25, was thought desirable by Congress, it also shows that it was thought necessary to accomplish this exclusion by the insertion of express language to that effect.

Section 37 deals expressly with a case such as the present. It provides that, where an alien who has taken up his residence in this country and has filed his preliminary declaration to become a citizen, and thereafter shall send for his wife or minor children to join him, if said wife or any of said children shall be found to be affected with any contagious disorder, and if it is proved that said disorder was contracted on board the ship in which they came, and is so certified by the examining surgeon at the port of arrival, such wife or children shall be held, etc., "until it shall be determined whether the disorder will be easily curable, or whether they can be permitted to land without danger to other persons, and they shall not be deported until such facts have been ascertained." This section expressly confers rights upon an alien situated as were the relator and his father and

157 F.—25

next friend, the denial of which rights is made the ground of the appeal under the twenty-fifth section.

Having been deprived of the right of appeal, as conferred by section 25 of the act in question, the relator was unlawfully held in custody. We are also of opinion that he was unlawfully deprived of asserting the right conferred by section 37.

The judgment, therefore, of the district judge is affirmed.