NITED STATES ex rel. BARLIN v. RODGERS, U. S. Com'r of Immigration, et al.

(Circuit Court of Appeals, Third Circuit. December 4, 1911.)

Nos. 39–41, 43, 44 (Nos. 1,495, 1,496, 1,497, 1,498, 1,500).

1. CONSTITUTIONAL LAW (§ 70*)—REGULATION OF IMMIGRATION—MATTERS SUBJECT TO JUDICIAL INQUIRY.

The power and authority of the United States, as an attribute of its sovereignty, to either prohibit or regulate the immigration of aliens, are plenary, and Congress may choose such agencies as it pleases to carry out whatever policy or rule of exclusion it may adopt, and, so long as such agencies do not transcend the limits of the authority or abuse the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

discretion reposed in them, their judgment is not open to challenge or review by the courts.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 129–132; Dec. Dig. § 70.*]

2. HABEAS CORPUS (§ 92*)—EXCLUSION OF IMMIGRANTS—REVIEW OF ORDER OF IMMIGRATION OFFICERS.

Where an alien immigrant was before the board of inspectors, so that they had an opportunity to inspect and examine him in person, and he was given a fair hearing and full opportunity to present evidence, an order denying him admission on the ground that he is likely to become a public charge cannot be reviewed by the courts in habeas corpus proceedings as not supported by evidence.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. §§ 81–95; Dec. Dig. § 92.*]

3. ALIENS (§ 54*)—ORDER FOR DEPORTATION OF IMMIGRANT—REVIEW BY COURTS —SUFFICIENCY OF RECORD.

While the record of proceedings before the immigration officers must show a regular procedure in accordance with the requirements of the law to justify an order for the deportation of an immigrant when attacked in habeas corpus proceedings, it is only a substantial conformity of the procedure to such requirements that is demanded, and a technical precision in the exemplification of the record is not to be expected.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. § 54.*]

4. ALIENS (§ 54*)—EXCLUSION OF IMMIGRANT—SUFFICIENCY OF FINDINGS.

Under Immigration Act Feb. 20, 1907, c. 1134, § 2, 34 Stat. 898 (U. S. Comp. St. Supp. 1909, p. 448), which provides that "the following classes of aliens shall be excluded from admission into the United States; * * * any person whose ticket or passage is paid for with the money of another or who is assisted by others to come, unless it is affirmatively and satisfactorily shown that such person does not belong to one of the foregoing excluded classes and that said ticket or passage was not paid for by any corporation, association, authority or municipality, or foreign government, either directly or indirectly"— a finding by the immigration officers that an immigrant was assisted to come by another warrants his exclusion, unless such disability is removed by affirmative and satisfactory evidence, and unless evidence on that question is offered no further finding is required.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. § 54.*]

5. ALIENS (§ 46*)—"ALIEN IMMIGRANT"—CONSTRUCTION OF STATUTE—RIGHT OF RE-ENTRY AFTER RESIDENCE IN UNITED STATES.

Whether or not an alien who has once been admitted into the United States, but who, without being naturalized, afterward returned to the country of his original domicile, upon again coming to this country, is an "alien immigrant" within the meaning of Immigration Act Feb. 20, 1907, c. 1134, 34 Stat. 898 (U. S. Comp. St. Supp. 1909, p. 447), and subject to its provisions, depends upon the circumstances of the particular case. If, on his first entry, he left a family in his native country, to which he returned, without any definite intention of again coming to the United States, and leaving neither business nor property here, he cannot be considered to have acquired a domicile here, which takes him out of the operation of the statute when he again applies for admission without his family.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 105; Dec. Dig. § 46.*

For other definitions, see Words and Phrases, vol. 1, p. 302; vol. 8, p. 7571.]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeals from the District Court of the United States for the Eastern District of Pennsylvania.

Habeas corpus by the United States, on relation of Michael Barlin, against John J. S. Rodgers, Commissioner of Immigration, and others; and four other similar cases on relation, respectively, of Zozie Popek, Attanasio Parebianco, Angelo Massini, and Tomasso Maietta. Judgment for respondents in each case, and relators appeal. Affirmed.

David Phillips (John Monaghan, on the brief), for appellants in all five cases.

Jasper Y. Brinton, Asst. U. S. Atty. (J. Whitaker Thompson, U. S. Atty., on the brief), for appellee Commissioner in all five cases.

Before GRAY, BUFFINGTON, and LANNING, Circuit Judges.

GRAY, Circuit Judge. The records in these cases severally disclose that the relators in the petitions for habeas corpus were detained for deportation by order of the immigration authorities of the United States, in the custody of the master of the vessel on which they had arrived at the port of Philadelphia, in the Eastern district of Pennsylvania. Against the master, as well as against the Commissioner of Immigration at said port, the writ was prayed by the relators severally, and issued by the court below; they also disclose the returns made by the respondents to the writs, the evidence taken by the boards of special inquiry, and the correspondence in certain of the cases with the Commissioner of Immigration and the Secretary of Commerce and Labor.

The court below found in all the cases that, as the immigration officers had not transcended the authority conferred upon them by law, their decision was final, and that the court had no jurisdiction to review such decisions or the findings of fact upon which they were made, and it was ordered accordingly in each case that the relator be remanded to the custody in which he was detained. From these orders, appeals have been taken to this court.

In considering these appeals, one question is common to them all, viz., whether the hearings accorded to the relators by the immigration inspectors and the special boards of inquiry, and the proceedings thereunder, were of such a character as to render final the findings of fact and the judgments rested thereupon.

[1] This court has had occasion heretofore to consider the power and authority of the United States, as an attribute of its sovereignty, to either prohibit or regulate the immigration of aliens and the policy adopted by the government in its exercise. Rodgers v. U. S. ex rel. Cachigan, 157 Fed. 381, 85 C. C. A. 79, and the cases there cited. This power and authority is plenary, and is coextensive with any danger or exigency which, in the view of Congress, may demand its exercise. Aliens are clothed with no original or inherent rights of entry into this country. They may be excluded altogether, or, if permitted to come, come only subject to the conditions and pursuant to the regulations which Congress may prescribe. The Congress of the United States has dealt with this matter of immigration by a succession of statutes, in all of which summary hearings before ministerial

officers are provided for, upon whose quasi judicial findings of the facts the law has made the exclusion of aliens to depend. It cannot be, and never has been, doubted that Congress may choose such agencies as it pleases to carry out whatever policy or rule of exclusion it may adopt, and that so long as such agencies do not transcend the limits of the authority and discretion reposed in them, their judgment is not open to challenge.

[2] Our attention has been called to a recent opinion of Judge Lacombe, in the case of United States ex rel. Buccino et al. v. Williams, Commissioner of Immigration, 190 Fed. 897, in the Circuit Court for the Southern District of New York, upon a habeas corpus sued out by aliens seeking to enter the country, and who were held by immigration officers for deportation. This opinion seems to us to state clearly the principles applicable to the cases before us. It is in part as follows:

"Upon the hearing, petitioner withdrew all charges in the petition against the good faith and conduct of the immigration officers resting application upon three propositions only, viz.:

"(1) That the finding of the board that the alien was likely to become a public charge was a nullity for the alleged reason that the board had no evidence before it tending to sustain such finding.   *   *   *

"1. As to the first of these propositions, the board had before it the certificate of the examining surgeons that Thomas Buccino was undersized and 'had varicose veins of the left leg, which affects his ability to earn a living.' Moreover, the alien was present in person, and they had opportunity during the examination which they conducted to form an opinion as to his physical and mental qualifications for earning a livelihood.

"Ever since the decision of the Supreme Court in Nishimura Ekiu v. United States, 142 U. S. 651 [12 Sup. Ct. 336, 35 L. Ed. 1146], it has, so far as I know, been held in this circuit that if the board of inspectors had the alien before them so that they might themselves inspect and examine him, there was sufficient before them to warrant his exclusion on the ground that he was liable to become a public charge, if, in their discretion, they reached such a conclusion. Nothing which has been presented on this argument persuades me to reverse this holding. It seems to me, at least, to be in strict conformity to the rule enunciated in the Ekiu Case and to the proposition enunciated in a host of other cases, that the decisions of these boards are not to be set aside by the courts because they think the weight of testimony does not support the board's conclusion. Speaking for myself, I may also say that if I were a member of one of these boards of inspection, I should find the statements of relatives and friends that they would look after the newcomer far less persuasive than the enlightenment as to his qualifications to support himself, which I might obtain from seeing and talking with him."

A careful examination of the records in each of the cases before us fails to convince us that any of the relators had other than a fair hearing before the inspectors and the special boards of inquiry, with full notice of their right of appeal to the Commissioner of Immigration and the Secretary of Commerce and Labor in Washington, of which right the relators availed themselves. At the hearings, the aliens were present, testified in their own behalf, and it does not appear that the testimony of any witness offered by or on behalf of such aliens was refused. No criticism is made as to the fairness of the hearings, or as to the opportunity given to the aliens to testify and produce witnesses in their behalf. The objection urged is, either that there was no testimony, or insufficient testimony to warrant the findings of the inspectors. The records disclose the fact that in

every case beside the examination of the alien, the testimony of witnesses summoned in his behalf was heard by the inspectors, and in some of the cases the certificates of the official surgeon, in regard to physical disability, were produced. But more than all, the alien himself was present and subjected to personal examination by the inspectors. It is obvious that the printed record of the answers made by the alien and witnesses to the questions propounded by the inspectors, does not fairly present the case to us that was actually before the inspectors. The important factor of the impression made upon the inspectors by the personal appearance of, and the conversations had with, the aliens, is necessarily absent from the record. We can well conceive that such an impression would have a most important bearing upon the determination reached by the inspectors in those cases in which the alien was debarred from entry, on the ground that he was likely to become a public charge, or as having been certified by the examining surgeon as mentally or physically defective in such a way as to affect his ability to earn a living. We are not at liberty to set aside such determination, because on the record we think we might or would have reached a different conclusion. We have only to find that the inspectors acted within the scope of their authority, and that the integrity of their proceedings is not impeached. We have no jurisdiction to correct their mistakes, if any, in finding as a fact that all the relators belonged to classes which, by section 2 of the immigration act of 1907 (Act Feb. 20, 1907, c. 1134, 34 Stat. 898 [U. S. Comp. St. Supp. 1909, p. 448]), are excluded from admission into the United States. The question of law raised by two of the relators will be presently considered.

Taking up the cases separately, we turn to that of Michael Barlin. It is disclosed by the record in his case that he arrived at the port of Philadelphia on the 25th day of September, 1910; that upon his arrival, he was given a physical and mental examination by medical officers of the United States Public Health and Marine Hospital Service; that he was given a hearing before a board of special inquiry, as provided for by the act of 1907, at which hearing he was examined at length, as were also the witnesses who were called in his behalf; that the medical officer who made the examination certified that Michael Barlin "had a rudimentary right hand, congenital, affecting his ability to earn a living." This certificate does not appear in the printed record. The original thereof, however, has been produced at the hearing, and by consent of counsel for the respondent has been incorporated therein. At the conclusion of the hearing, there is the following entry:

"This alien has a certificate against him of a nature which may affect his ability to earn a living and render him likely to become a public charge, but as the relatives have signified their ability to furnish bond, the board is unanimous to withhold the final decision, in order that the case may be submitted to the Bureau for consideration as to whether or not the bonding privilege should prevail."

This application to the Bureau was accordingly made and refused by the Acting Secretary of Commerce and Labor. Thereupon, we find the following entry in the record:

"September 30, 1910.   Telegram receipt from the Bureau this day to effect that the Secretary denied the bond application in the case of Michael Barlin.

"The case was further considered by the board, and it was the unanimous decision to exclude, as likely to become a public charge, for the reason that he is certified as having a rudimentary right hand, affecting his ability to earn a living.

"Excluded by original board.

"Alien advised of right of appeal."

[3] While it is true that the record produced in the court below on habeas corpus proceedings must show a regular procedure by the ministerial officers of the government, in accordance with the requirements of the law, to justify an order of deportation, it is only a substantial conformity of the procedure to such requirements that is demanded and a technical precision in the exemplification of the record is not to be looked for.

If the surgeon's certificate, by reason of its failure to certify that the defect would affect the alien's ability to earn a living, was not to be considered as final under the rules of the Bureau, it seems to us that it was clearly within the power of the board to take the finding of the physical defect into consideration with the examination and the other evidence in excluding, on the ground that the respondent was likely to become a public charge, and that this was the ground of the exclusion is emphasized by the fact that the alien is advised of his right of appeal.   We find nothing in the record, therefore, indicating that in any respect the alien was deprived of any right accorded to him by law or regulation, nor do we find anything in the conduct of the case from which this court would have jurisdiction to review the findings of fact made by the board.

In the case of the appellant, Zozie Popek, we find the same situation as in the Barlin Case.   There is no contention that the board acted beyond the scope of their authority, but only the suggestion that they acted upon insufficient evidence.   The alien in this case was subjected to a personal examination, and two witnesses named by him were called in his behalf.   The order entered by the board was as follows:

"In view of the appearance of this alien, and the fact that he stammers to such an extent that he can scarcely make himself understood, and has a wife and four small children in Russia dependent upon him for support, this board unanimously votes to exclude him as a person likely to become a public charge.

"Notified of his right of appeal."

To assert the right to review the findings of the board in this regard would be to open the door for a review of every case in which it is suggested that the findings of fact are not in accord with the weight of the evidence.

In the case of Attanasio Parebianco, the record shows that the alien was sworn and personally examined by the board of special inquiry. At such examination, he declared that he was 17 years of age. His cousin, residing in Philadelphia, was examined in his behalf and the board made the following entry:

"The unanimous opinion of the board is that the alien, Attanasio Parebianco, is a person likely to become a public charge, because of the fact that

he has but very little money, is only 17 years of age and is very small for his age, which would prevent his earning his own living, and has no one in the United States who would be responsible for him except his cousin.

"Notified of his right of appeal."

Appeal was made and record transmitted to the Commissioner General of Immigration. Five days thereafter, the Acting Secretary notified the Immigration Service in Philadelphia that the excluding decision of the board had been affirmed.

We cannot say that in this case there was no evidence upon which the board was authorized to act, and especially we cannot ignore the weight that the personal inspection of the alien may have had upon the minds of the inspectors. No ground is presented by which the finality of the decision by the immigration authorities can be avoided.

[4] In the cases of Angelo Massini and Tomasso Maietta, it appears from the records that there was a full examination and hearing accorded to each of the relators, notwithstanding their general averment to the contrary. Each of them was examined personally by the board, and testimony of witnesses called in their behalf was also adduced, and it is nowhere suggested that any witness or testimony demanded or called for by the aliens was excluded.

The finding of the board in the Massini Case, made after the hearing, is as follows:

"It is the opinion of this board that this alien comes to this country in violation of section 2, as an assisted alien, and that there is also strong evidence of alien coming under inducement to perform labor in this country, violating section 24.

"Unanimously excluded.

"Notified of right of appeal."

This appeal was had and the excluding decision of the board was affirmed by the Acting Secretary of Commerce and Labor. There was an abundance of evidence bearing upon the question, whether the alien belonged to the excluded class described in section 2 of the act of 1907. But with the weight or conclusiveness of this evidence, we have nothing to do, except so far as it affects the question of the authority of the board to make any finding in the premises.

The second section of the immigration act provides:

"The following classes of aliens shall be excluded from admission into the United States. * * * Any person, whose ticket or passage is paid for with the money of another, or who is assisted by others to come, unless it is affirmatively and satisfactorily shown that such person does not belong to one of the foregoing excluded classes, and that said ticket or passage was not paid for by any corporation, association, authority, or municipality, or foreign government, either directly or indirectly."

The counsel for the appellant contends that, because the board of special inquiry made no special finding that the alien belonged to any of the excluded classes, it is to be presumed that the alien had established affirmatively and satisfactorily that he was not a person likely to become a public charge, and that he was not an idiot, imbecile, etc. Therefore, he argues that unless there is evidence that the alien was assisted to come into this country, or his passage money paid, by a municipality, corporation, or foreign country, the finding of the

board of special inquiry was without authority of law. As to this contention, it is only necessary to remark that the evidence in this case is specific and uncontradicted, that the alien came to this country on a ticket bought for him by his cousin, a resident of America. It is therefore perfectly clear that he should be excluded as a person whose ticket or passage is paid for with the money of another, unless the disability thus denounced upon such an alien by law can be removed by its being affirmatively and satisfactorily shown that he does not belong to one of the classes excluded by the act. This is a stringent requirement, and there is nothing in the record to show that it has been met by any testimony offered by the alien or by any other evidence in the case. On the contrary, the testimony as contained in the record more than supports the finding of the board, that "there is also strong evidence of alien coming under inducement to perform labor in this country," which would tend to place him in the excluded class of contract laborers. In saying this, we must not be considered as asserting for the court below, or this court, the jurisdiction to determine what is or is not satisfactory evidence in this regard. The immigration acts confer exclusive power upon the immigration officials to determine such questions.

In the case of Maietta, the relator was accorded a hearing and was examined personally by the special board of inquiry. Upon his own testimony and upon his appearance, as seen by the members of the board, they made the following order:

"In view of the advanced age of this alien, which will render him incapable of earning his own living, and having a wife and four children in Italy, this board votes unanimously to exclude him as a person likely to become a public charge.

"Notified of his right of appeal."

There is nothing in the record to show that any witness or testimony asked for or demanded by the alien was refused, although the petition for habeas corpus alleges to the contrary. Under the circumstances disclosed by this record, we cannot, as we have said before, substitute the judgment of the court for the determination of the immigration officials. upon whom the act confers exclusive power to determine such questions.

[5] But in this case and in the case of Massini, the further objection is made, that both aliens, having formerly been admitted to, and having established a domicile in, this country, are not amenable at this time to the immigration act of 1907. Massini, after first testifying before the board that he had not previously been in the United States, later stated, when recalled, that he had been in the United States three years prior to his present entry, at which time he had stayed here two years. The record shows in the case of Maietta, who is 65 years of age, that he had been in the United States four years previously, and had stayed one year at Tomkinsville, New York; that he had returned to his original home in Italy, where he had been three years before his second coming to the United States, and that his wife and children were still in Italy.

There is no express language in the statute referring to the ques-

191 F.—62

tion, whether an alien, who has once been admitted and returns to his original domicile, is entitled to enter the country a second time, without being subject to the requirements of the immigration act, or under what conditions he may or may not so return.

Section 2 of the act provides that certain described classes of aliens shall be excluded. The act of 1907 is entitled, "An act to regulate the immigration of aliens into the United States," and all the provisions of the act are framed with reference to alien immigrants. Persons who have acquired a temporary domicile in this country, and have then returned, without being naturalized, to their original home for a longer or shorter period, would still be aliens on coming back to this country, but whether alien immigrants within the meaning of the act would depend upon circumstances of the particular case. We have been referred by the counsel for the appellants to the decision of this court in the case of Rodgers v. United States ex rel. Buchsbaum, 152 Fed. 346, 81 C. C. A. 454. The significance of the decision in that case can only be ascertained by a careful consideration of the facts upon which it was based. The appellee was a native of Austria, and emigrated to the United States with his wife and family in March, 1901. He took up a permanent residence with his wife and family in the city of New York, and established himself in business, in which he still retained his interest. From the time of his arrival in New York until April, 1905, he continuously resided in that city with his family, pursuing his business and acquiring extensive property and contractual rights. He declared his intention to become a citizen of the United States in March, 1905, and in April of that year, he "took passage on the steamer 'Finland' for Antwerp, and thither went to Galicia, Austria, for the purpose of settling an estate." He alleged that in leaving this country for that purpose he "never intended to give up his rights which he acquired in the United States, but went with the intention of returning as soon as his business was transacted." His family, consisting of his wife and two children, remained in New York, and were still residing there. He returned to the United States, arriving November 7, 1905. He was refused a landing by the Commissioner of Immigration, who ordered his deportation, on the ground that he was afflicted with trachoma. The court, in its opinion, say that the evidence shows beyond dispute that "he went for a specific purpose, involving only a temporary absence, and that he left in New York his business and his family, with full intention to return to them as soon as he should have accomplished the object of his trip." Upon these facts, as found, the court held that the alien was not an immigrant within the meaning of the immigration act of 1903. The purposes of this act are the same as, and its provisions, so far as they concern the question now under consideration, are similar to, those of the act now before us. In the opinion written by Judge Bradford for this court, the ground of its conclusion is thus stated:

"The return of Buchsbaum from Austria to this country in November, 1905, did not clothe him with the character of an immigrant; he did not at that time seek to acquire a fixed residence or domicile in the United States. That had theretofore been accomplished. We are clearly of the opinion that

an immigrant who has acquired a domicile in the United States cannot thereafter, and while still retaining such domicile, legally be treated as an immigrant on his return to this country after a temporary absence for a specific purpose not involving change of domicile. 'Returned immigrant,' as applied to him, is a palpable misnomer."

This language does not apply to either of the cases now under consideration. In the case of Massini, the alien, after his first entry into this country, stayed two years and then returned to his old home, where he stayed one year. He then returned to the United States at the suggestion of his cousin, who lived in Philadelphia and who sent him the money for his passage, promising to procure work for him. There is no evidence that a permanent domicile was acquired by this alien on his first entry into the United States; no evidence that either wife or family, though he testified that he had both, came with him at that time. His return to his native country was not for a specific purpose, nor his absence a temporary one. So also in the case of Maietta, who, on his first coming to the United States, resided for one year at Tomkinsville, New York, and then returned to Italy, where he remained for three years. He testifies that he came to this country because he was out of work, and that he left his wife and three children in Italy. It will thus be seen that all the facts in both of these cases absolutely negative the acquirement of any domicile by the appellants in this country before their return to Italy. And they not only negative any temporary purpose in returning, but strongly point to the intention of permanently remaining in their old homes.

We have no difficulty in holding that both of these last-mentioned appellants were alien immigrants upon their last arrival in this country, and as such, subject to the provisions of the immigration laws of the United States. We think the determination of this case is not out of line with the judgment of this court in the case just referred to, of Rodgers v. United States ex rel. Buchsbaum, and we affirm the opinion then expressed, that:

"An immigrant who has acquired a domicile in the United States cannot thereafter, and while still retaining such domicile, legally be treated as an immigrant on his return to this country after a temporary absence for a specific purpose, not involving change of domicile."

The judgments of the court below in all the cases named in the caption are hereby affirmed.