UNITED STATES ex rel. IVANOW et al. v. GREENAWALT, U. S. Immigration Com'r, et al.

(District Court, E. D. Pennsylvania. May 19, 1914.)

No. 62.

1. ALIENS (§ 39*)—POWER TO EXCLUDE ALIENS.

Congress may define and regulate the admission of aliens into the United States and prescribe the conditions upon which the privilege of admission may be enjoyed.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 100; Dec. Dig. § 39.*]

2. ALIENS (§ 39*)—EXCLUSION—REVIEW OF PROCEEDINGS.

Congress may commit to any official, department, or tribunal, executive or judicial, the determination of any questions of fact or otherwise upon which the admission of aliens may depend, and may prescribe within what time, in what manner, and by whom any decisions made may be reviewed.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 100; Dec. Dig. § 39.*]

3. ALIENS (§ 54*)—EXCLUSION—REVIEW OF PROCEEDINGS.

No express power having been conferred and no duty imposed on the courts to review the proceedings of immigration officials in excluding aliens, the court cannot and should not interfere unless a judicial question fairly arises.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. § 54.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. HABEAS CORPUS (§ 23*)—ADMINISTRATIVE PROCEEDINGS—JUDICIAL FUNC-
TIONS.
   Color of authority or even clear and unquestioned power to review the
   acts of a different department of the government should be exercised with
   care and discretion.
   [Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 17; Dec.
   Dig. § 23.*]

5. ALIENS (§ 54*)—EXCLUSION—REVIEW OF PROCEEDINGS.
   The partial exclusion of counsel from hearings held by immigration
   authorities pursuant to the general regulations of the department did not
   present a judicial question justifying the courts in reviewing the acts of
   the immigration officials in excluding an alien.
   [Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. §
   54.*]

Habeas corpus by the United States, on the relation of Roman
Ivanow and others, against Elmer E. Greenawalt, United States Com-
missioner of Immigration, and others. Relators remanded to the cus-
tody of the immigration authorities.

Monaghan & Phillips, of Philadelphia, Pa., for petitioners.
Robert J. Sterrett, Asst. U. S. Atty., and Francis Fisher Kane, U.
S. Atty., both of Philadelphia, Pa., contra.

DICKINSON, District Judge. [1-3] This is an appeal from the
helpless. So far as the questions which arise are judicial questions,
they are questions of liberty—human liberty. The history of the writ
of habeas corpus and every Bill of Rights which has been incorporated
into our Constitutions, federal and state, as well as the legislation
which has sought to preserve and make practically effective the benefits
of the writ, all alike show the emphasis which the people have ever
placed upon the right of every one to enjoy personal liberty. No court
in the United States would ever refuse a prompt and full response to
the plea that this right be upheld. The more friendless and helpless
the relator, the quicker should be the response. This right to liberty,
however, is to a liberty under the law. Let us see how this case stands.
The main principle involved is a political, not a judicial, one. The
right and power of the people of the United States through the action
of Congress to define and regulate the privilege of admission to our
shores must be unquestioned. Outside the act of Congress, admission
is a privilege, not a legal right. It must also go without question that
Congress may prescribe the conditions upon which this high privilege
may be enjoyed, and may commit to any official, department, or tri-
bunal, executive or judicial, the determination of any questions of fact
or otherwise upon which the exercise of this privilege may depend.
Congress may also prescribe within what time, in what manner, and by
whom any decisions made may be reviewed. When Congress has in
its wisdom committed the determination of any such question to one
official, department, or tribunal, it must be that no other official, de-
partment, or tribunal, unauthorized by Congress, executive or judi-
cial, can control or interfere with the determination thus reached.
Over all, of course, are the mandates of the Constitution and the rights

to which it is a shield. The one with which we are concerned is the right to liberty to which any real man would with Patrick Henry give the preference over the mere right to live. The principle by which this cause must be determined is to the American mind the greatest of all principles, but, like all really great principles, it is clear and may be simply stated. The general question involved is this: Are these relators, by the restraint from which they ask to be relieved, being deprived of any legal right? What is the right of the denial of which they complain? It is not the natural right of liberty but the privilege of admission to the United States. The particular question, therefore, is: Have they been denied admission in accordance with the declared will of Congress or merely by the arbitrary act of the defendant? Congress by numerous acts has declared who shall not be admitted into the United States. It has defined the grounds upon which such exclusion is based. It has committed the execution of these laws to designated officials whose duty it is made to determine the questions of whether particular alien applicants for admission are within or without the excluded classes. It has provided a complete system for the effective enforcement of its will. It has guarded with sedulous care against the danger of possible abuse of the power conferred upon the immigration officials by according the privilege of an appeal which may reach in due course the Secretary of Labor, and the order of exclusion does not become operative until the whole proceeding has his sanction and the order his approval. A search into the provisions of the immigration laws for any power or authority granted to the courts to interfere with this well-ordered system would be fruitless. No duty has been imposed upon them and no power conferred. The reasons for this are many and obvious. The judges of the courts have at least one reason to be grateful to Congress that it has so decreed. As therefore no express power has been conferred and no duty has been imposed upon the courts, it is clear that they cannot interpose and ought not to interfere between the relators and the government officers to whom Congress has committed the authority to execute the laws, unless a judicial question fairly arises out of the record.

Thus seems the law to stand on general principles. It only remains to test their soundness by a reference to the decided cases. This test is met by the case of United States ex rel. Barlin v. Rodgers, 191 Fed. 970, 112 C. C. A. 382, and no other citations of authorities are called for to vindicate the conclusions reached.

At the cost of perhaps unduly lengthening this opinion, we do feel called upon to discuss the legal merits of this particular case. This is the due of the relators and their counsel. The relators among them bridge the whole span of life. At the one end is a helpless child; at the other is an equally helpless old woman. Between them is a boy of 15 and a girl of about the same age, together with a young man and a young woman very little older. They are without powerful or influential friends, and against them they have arrayed the officials who represent the might of a great nation. Poor people so situated have the right to know and to feel that their cause has been patiently and fully heard and their claim of right not lightly regarded. Their counsel ar-

gued their cause clearly and fairly and, as was proper, with an earnestness which, although well ordered and regulated, was forceful. At the oral argument before the bar of the court, we did not call upon counsel for the government to reply, and, because of all of these things, we gave to counsel for relators time to file a full brief. This we have carefully considered, but are unconvinced and adhere to the view of the case already expressed.

There are only a few points that need to be touched upon. The case of these relators has been heard and considered fully and carefully by the proper executive department of the government, and the order which we are asked to render ineffective comes before us bearing the approval of the Secretary of Labor as just and proper. The touchstone of the whole case is to be found in the statement that this court is asked to review the findings of another department of the government upon a question of fact which it was clearly within their province to have found either as they did or differently from what they did. The appeal is made "to this court for a review of the decision." To an appeal to review the whole proceedings in order that it may be determined whether the immigration authorities in depriving these relators of their liberty acted within the scope of the authority conferred upon them by the act of Congress, any court would and ought to make a quick response. The response of the court would be equally prompt whether the official had openly and boldly usurped a power and jurisdiction which the law had not conferred upon him, or whether he resorted to the always miserably unjust and sometimes the cowardly expedient of attempting to hide the real facts under findings which rest upon nothing but his own desire to grasp the power to do violence to the rights of others, which he could not otherwise wield than by standing upon false findings of fact. Intellectual dishonesty should never be permitted to confer either jurisdiction or power upon any official, and, when power thus acquired is attempted to be used to another's hurt, the courts should be alert to halt it.

[4] Before responding, however, to an appeal to review the findings of another tribunal upon a question of fact within their power and duty to find, any court ought to inquire: First, whether it has authority to interfere; and, second, whether it ought to exercise the power it has. The reasons for this are obvious. Under our scheme of government its powers and their execution have been apportioned by the Constitution and the laws made in pursuance thereof among several different departments and officials. When one department can find color of authority or even clear and unquestioned power to review the work of another, such power ought always to be exercised with care and discretion. The comity which exists between the different departments of government and the necessity for harmonious action demands this. This principle of comity is everywhere recognized, and its wisdom must be admitted by every thoughtful mind. It is as much a practical necessity in the action of governmental departments and among different courts and different nations as tact is in the individual concerns of life. If careful search were made, an official in one department might possibly be found who deemed himself superior in

judgment to some official in another department, and it is not an uncommon thing to find individuals who know more than the whole of Congress and that our laws are all wrong. Even if the fact of the superior wisdom be admitted, the questions still recur: Has this wiser man the lawful power and authority to interfere with the official acts of the other, and, if he has, is it a wise and prudent thing to interfere?

[5] A further point is made of the partial exclusion of counsel from the hearings held by the immigration authorities. It is due both to the government officials and to counsel to have the fact appear of record that this exclusion, so far as it was enforced, was not personal to counsel nor peculiar to this case. There was no exclusion except to the extent that the general regulations of the department require. It is sufficient to say that in this there was no deprivation of any legal right. There is no act of Congress conferring the legal right of representation, and the constitutional right is given only in criminal prosecutions. Any one familiar with the history of our race knows what a struggle was made to secure this right even in criminal cases, and, whatever views he may entertain as to the abstract justice of its denial in other proceedings, he would scarcely claim that by this a judicial question was fairly raised.

The appeal of the relators must be made to the Department of Labor, who can alone give them relief. The relators are therefore remanded to the custody of the immigration authorities, to be dealt with according to law.