# CASES

## ARGUED AND DETERMINED

IN THE

## UNITED STATES CIRCUIT COURTS OF APPEALS AND THE DISTRICT COURTS

SIBRAY, Immigrant Inspector, et al. v. UNITED STATES ex rel.
YEE YOK YEE.

(Circuit Court of Appeals, Third Circuit. November 3, 1915.)

No. 1999.

1. HABEAS CORPUS ⊶4—NATURE AND SCOPE OF PROCEEDING.
    A habeas corpus proceeding cannot be made to perform the function of a writ of error, but only to examine into the power and authority of the court to act, and not the correctness of its conclusions.
    [Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 4; Dec. Dig. ⊶4.]

2. ALIENS ⊶54—PROCEEDINGS FOR DEPORTATION—REVIEW BY COURTS.
    The action of immigration officials in ordering the deportation of aliens under Immigration Act Feb. 20, 1907, c. 1134, §§ 20, 21, 34 Stat. 904, 905 (Comp. St. 1913, §§ 4269, 4270), is reviewable by the courts only so far as to determine whether they acted within the scope of their authority and the fairness of their proceedings.
    [Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. ⊶54.]

In Error to the District Court of the United States for the Western District of Pennsylvania; W. H. Seward Thomson, Judge.

Habeas corpus on petition of Yee Yok Yee, next friend and on behalf of Yee Kong, against W. W. Sibray, Immigrant Inspector, and others. Writ granted, and defendant brings error. Reversed.

The following is the opinon of the District Judge:

This is a writ of habeas corpus, issued on the petition of Yee Yok Yee, next friend and on behalf of Yee Kong, who is confined in the Allegheny county jail. The facts of the case, as they appear in this record and as disclosed by the testimony, are as follows:

Yee Kong was born in China, and at the age of 20 years arrived in the United States at the port of San Francisco, Cal., on the steamship Siberia,

landing on October 31, 1913. On his entry a certificate was issued to him by the immigration officer in charge in the following form:

"Description.

"Name, Yee Kong.
"Age, 20. Height, 5 ft. 5 in.
"Occupation, student, San Francisco, Cal.
"Admitted as son of official, 13013/6–8 S. S. Siberia, October 31st, 1913.
"[This is followed with some marks of identification.]
"Issued at the port of San Francisco, Cal., this 28th day of November, 1913.
　　"[Seal]　　　　　　　　　　　　　　　　　　Samuel W. Backus,
　　　　　　　　　　　　　　"Immigration Official in Charge."

On the face of the certificate is a photograph of the alien. On the reverse side it is certified that the person named and described on the reverse side has been regularly admitted to the United States as of the status indicated, whereof satisfactory proof has been submitted.

About 14 months later, to wit, in January, 1915, the defendant was arrested and brought before the United States commissioner, charged with being a Chinese laborer unlawfully within the United States. On February 2, 1915, said case being called before the commissioner, the same was withdrawn by the representatives of the government. In the meantime, on January 21, 1915, a warrant was issued for the arrest of Yee Kong on the ground that he has been found in the United States in violation of section 6 of the Chinese Exclusion Act of May 5, 1892, c. 60, 27 Stat. 25, as amended by the Act of November 3, 1893, c. 14, § 1, 28 Stat. 7 (Comp. St. 1913, § 4320), being a Chinese laborer not in possession of a certificate of residence. A hearing was had before L. B. Spaun, examining inspector, and on submitting the proofs taken the Acting Commissioner General found that the alien is in the United States in violation of law, and a warrant for his deportation was issued on April 16, 1915. In the meantime the alien, unable to give the bond required, has been incarcerated in the Allegheny county jail.

It seems to me, from the records and proofs before me, that the rights and liberties of this young Oriental have been flagrantly disregarded and violated. His deportation is ordered on the ground that he is a Chinese laborer within the United States without a certificate of residence. This is the sole ground for which he was arrested, for which he was tried, and for which he is ordered deported. Now upon what, if any, legal proof is this order based? Assuming, for the present, that the government has shown that the alien is a Chinaman doing labor within the United States, and that this showing shifts the burden of proof upon him to show that he is lawfully within the country, the production of his certificate of identity, which was offered and is a part of this record, certainly shifts the burden of proof back again upon the government to show that, notwithstanding this fact, he is still unlawfully within the country. The certificate sets forth that the alien has been regularly admitted to the United States as of the status indicated therein and that satisfactory proof thereof has been admitted. The status indicated in the certificate is that of a student, son of an official, and the testimony in the record on the part of the alien shows that he is the son of Yee Yok Yan, who was president of one of the Six Companies in San Francisco. This makes for him a prima facie case. Such a certificate is not to be treated as a mere delusion, a false passport subject to be dishonored at any time at the caprice of any official of the government. It was said in United States v. Quan Wah (D. C.) 214 Fed. 462:

"Nor can the fact that the burden of proof to show right to be in the United States is thrown upon the Chinaman necessitate his further showing that the action of the authorities who decided he had the right to enter was correct, unless the evidence shows that his entry was fraudulently obtained. Liu Hop Fong v. United States, 209 U. S. 453 [28 Sup. Ct. 576, 52 L. Ed. 888]. The decision of his right to enter was presumptively correct, and, unless the United States shows persuasively to the contrary, the mere certificate of admission is sufficient. United States v. Ju Toy, 198 U. S. 253 [25 Sup. Ct. 644, 49 L. Ed. 1040]; Fok Young Yo v. United States, 185 U. S. 296 [22 Sup. Ct. 686,

46 L. Ed. 917]; Lem Moon Sing v. United States, 158 U. S. 538 [15 Sup. Ct. 967, 39 L. Ed. 1082]."

The presumption arising from the certificate that the alien was lawfully admitted to the United States must be overcome by some lawful proceeding sustained by competent testimony. What is the cause of his deportation? The warrant of arrest and the warrant of deportation sets forth as follows:

"Yee Kong, who landed at the port of San Francisco, California, ex S. S. Siberia, on the 31st of October, 1913, is subject to be taken into custody and returned to the country whence he came, under section 21 of the Immigration Act, approved February 20, 1907, being subject to deportation under the provisions of a law of the United States, to wit, the Chinese Exclusion Laws, for the following among other reasons: That he has been found within the United States in violation of section 6 of the Chinese Exclusion Act of May 5, 1892, as amended by the Act of November 3, 1893, being a Chinese laborer not in possession of a certificate of residence."

Turning to section 6 of the act referred to, we find that it provides as follows:

"And it shall be the duty of all Chinese laborers within the limits of the United States, who were entitled to remain in the United States before the passage of the act to which this is an amendment, to apply to the collector of internal revenue of their respective districts within six months after the passage of this act for a certificate of residence; and any Chinese laborer within the * * * United States, who shall neglect, fail or refuse to comply with the provisions of this act and the act to which this is an amendment, or who, after the expiration of said six months, shall be found within the jurisdiction of the United States without such certificate of residence, shall be deemed and adjudged to be unlawfully within the United States."

In other words, his deportation is based on the proposition that he is a Chinese laborer without a certificate of residence.

The *importation* of Chinese laborers is the thing forbidden by the act of Congress. At the time of the passage of the act referred to, Chinese laborers in the United States were allowed to remain simply by registering in accordance with the provisions of the act referred to, and only those who failed to so register were subject to deportation. It follows, also, as of course, that those who came afterwards as Chinese laborers, and were found within the country, were subject to deportation. They had shifted upon them by the act the burden of proof to show their right to remain and failing in this their deportation followed. In United States v. Quan Wah, supra, the court aptly said:

"This case raises two questions, one of which has previously been decided, viz., whether, upon credible testimony that the Chinaman entered the United States in the exempt class, he is liable to deportation if he becomes a laborer thereafter; and, second, whether doubt cast upon his real status when entering is a failure on his part to show that he has a right to remain. Both these questions must be answered in favor of the Chinese person. As has been decided in the case of United States v. Lee You Wing [D. C.] 208 Fed. 166, affirmed February 17, 1914, 211 Fed. 939 [128 C. C. A. 437], the importation or the entry of Chinese laborers into the United States is the thing forbidden by the statute. As to a Chinese then in the United States, only those who remained without proper registration at the time of the former registration law, and who were laborers at the time of the passage of that law, were subject to deportation for their subsequent status. Tom Hong v. United States, 193 U. S. 517 [24 Sup. Ct. 517, 48 L. Ed. 772]."

This act does not apply, and was never intended to apply, to Chinese in the United States under the exempted class. As to them, they are admitted, not as laborers, but as belonging to other vocations of life. Such aliens were at no time entitled to registration, and it would be an anomaly in procedure to admit an alien as a member of the exempted class and then deport him because at a later date it was alleged he had become a member of the excluded class.

We believe it to be the law that where, at the time of the passage of the act referred to, a Chinese person was in the United States lawfully, and not

entitled to registration as a laborer, that he is not subject to deportation though he subsequently become a laborer. United States v. Louie Juen [D. C.] 128 Fed. 522; United States v. Leo Won Tong [D. C.] 132 Fed. 190; United States v. Seid Bow [D. C.] 139 Fed. 56.

In the case of United States v. Foo Duck [D. C.] 163 Fed. 440, affirmed by the Circuit Court of Appeals, 172 Fed. 856, 97 C. C. A. 204, it was held that a Chinese alien admitted into the United States as the minor son of a resident merchant may not be deported for the sole reason that after attaining his majority he has worked as a laborer.

If it was claimed by the government that the alien here was admitted to the United States through misrepresentation or fraud, those facts should have been averred so that he would have been given a full opportunity to meet them. But this proceeding was not based on any such charge. Being convinced that the order of deportation is illegal and unjust, in view of the proceedings instituted against him for that purpose, the petition must be sustained, and the relator discharged and it is so ordered.

E. Lowry Humes, U. S. Dist. Atty., and Daniel S. Horn, Asst. U. S. Dist. Atty., both of Pittsburgh, Pa., for plaintiff in error.

Lowrie C. Barton, of Pittsburgh, Pa., for defendant in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

McPHERSON, Circuit Judge. Yee Kong, who arrived at San Francisco on October 31, was allowed to enter the country and was given the following certificate of identity, issued under section 19 of the Rules adopted by the Department of Labor to govern the admission of Chinese:

"Name, Yee Kong.    "Description.
"Age, 20. Height, 5 ft. 5 in.
"Occupation, student, San Francisco, Cal.
"Admitted as son of official, 13013/6–8 S. S. Siberia, October 31st, 1913.
"[This is followed with some marks of identification.]
"Issued at the port of San Francisco, Cal., this 28th day of November, 1913.
    "[Seal.]                                    Samuel Backus,
                                "Immigration Official in Charge."

On the back of the paper the following is printed:

"The United States of America.
"Certificate of Identity.
"Issued in Conformity with a Regulation of the Department of Commerce and Labor, Adopted March 19, 1909.

"This is to certify that the person named and described on the reverse side hereof has been regularly admitted to the United States as of the status indicated, whereof satisfactory proof has been submitted. This certificate is not transferable and is granted solely for the identification and protection of said Chinese person so long as his status remains unchanged, to insure the attainment of which object an accurate description of said person is written on the reverse side hereof, and his photographic likeness is attached with his name written partly across, and the official seal of the United States immigration officer signing this certificate impressed partly over, said photograph."

This certificate of "identity" is not to be confounded with the certificate of "residence," provided for and regulated by earlier statutes on the subject of Chinese laborers. The certificate of identity rests upon departmental regulations, and is a convenient instrument of evi-

dence for certain purposes only. On January 19, 1915, the alien (who had come to Pittsburgh several months before) was taken into custody on the charge of being a laborer unlawfully in the United States. This proceeding, which was before a United States commissioner and was under the Exclusion Acts, was abandoned on February 2; the federal authorities having meanwhile obtained a warrant from the Department of Labor under sections 20 and 21 of the Immigration Act of 1907. This change of procedure was within the Department's right. Both remedies were available, as the Supreme Court decided in U. S. v. Wong You, 223 U. S. 67, 32 Sup. Ct. 195, 56 L. Ed. 354; that case holding that the Immigration Act applies to Chinese laborers illegally coming to this country notwithstanding the special statutes relating to their exclusion. The court said:

"By the language of the act any alien that enters the country unlawfully may be summarily deported by order of the Secretary of Commerce and Labor at any time within three years. It seems to us unwarranted to except the Chinese from this liability because there is an earlier more cumbrous proceeding which this partially overlaps. The existence of the earlier laws only indicates the special solicitude of the government to limit the entrance of Chinese. It is the very reverse of a reason for denying to the government a better remedy against them alone of all the world, now that one has been created in general terms."

Witnesses were heard before the examining inspector, and the full record of the proceeding was forwarded to Washington, where the Department ordered the deportation of the alien on the ground that:

"He has been found within the United States in violation of section 6 of the Chinese Exclusion Act of May 5, 1892, as amended by the Act of November 3, 1893, being a Chinese laborer not in possession of a certificate of residence."

As he was confined in the Allegheny county jail, a writ of habeas corpus was sued out, and he was discharged for reasons that will appear in the opinion of the District Judge reported in the statement to this case. No attack was made on the warrant of deportation. The grounds on which the alien's liberty was sought were these: (1) Lack of jurisdiction in the Department to hear the case at all or to issue the warrant; (2) unfairness and abuse of discretion in the proceedings; (3) the alien's asserted right to remain after admittance as a student, even if he had become a laborer; (4) failure of the competent evidence to prove that he had become a laborer; (5) failure of the evidence to justify the order of deportation.

[1] We think the District Court went too far in considering the evidence and deciding what weight it should properly receive. The scope of a writ of habeas corpus is restricted. As was said in Harlan v. McGourin, 218 U. S. 445, 31 Sup. Ct. 46, 54 L. Ed. 1101, 21 Ann. Cas. 849:

"It is the settled doctrine of this court, often affirmed, that the writ of habeas corpus cannot be used for the purpose of proceedings in error, and that the jurisdiction under that writ is confined to an examination of the record, with a view to determining whether the person restrained of his liberty is detained without authority of law [citing cases]."

And on page 448 of 218 U. S., on page 47 of 31 Sup. Ct. (54 L. Ed. 1101, 21 Ann. Cas. 849), referring to the case then under consideration:

"The attack is thus not upon the jurisdiction and authority of the court (below) to proceed to investigate and determine the truth of the charge, but upon the sufficiency of the evidence to show the guilt of the accused. This has never been held to be within the province of a writ of habeas corpus. Upon habeas corpus the court examines only the power and authority of the court to act, not the correctness of its conclusions."

The Supreme Court again said, in Re Gregory, 219 U. S. 213, 31 Sup. Ct. 143, 55 L. Ed. 184:

"A habeas corpus proceeding cannot be made to perform the function of a writ of error and we are not concerned with the question whether the information was sufficient, or whether the acts set forth in the agreed statement constituted a crime—that is to say, whether the court properly applied the law, if it be found that the court had jurisdiction to try the issues and to render the judgment."

[2] And in U. S. v. Rodgers (C. C. A. 3d Cir.) 191 Fed. 970, 972, 974, 112 C. C. A. 382, 384, 386, this court decided under the Immigration Act now in question that it could not review and set aside a decision of the immigration officials, although upon the record the court might or would have reached a different conclusion. Judge Gray said:

"This court has had occasion heretofore to consider the power and authority of the United States, as an attribute of its sovereignty, to either prohibit or regulate the immigration of aliens, and the policy adopted by the government in its exercise. Rodgers v. U. S. ex rel. Cachigan, 157 Fed. 381, 85 C. C. A. 79, and the cases there cited. This power and authority is plenary, and is coextensive with any danger or exigency which, in the view of Congress, may demand its exercise. Aliens are clothed with no original or inherent rights of entry into this country. They may be excluded altogether, or, if permitted to come, come only subject to the conditions and pursuant to the regulations which Congress may prescribe. The Congress of the United States has dealt with this matter of immigration by a succession of statutes, in all of which summary hearings before ministerial officers are provided for, upon whose quasi judicial findings of the facts the law has made the exclusion of aliens to depend. It cannot be, and never has been, doubted that Congress may choose such agencies as it pleases to carry out whatever policy or rule of exclusion it may adopt, and that so long as such agencies do not transcend the limits of the authority and discretion reposed in them, their judgment is not open to challenge."

"We are not at liberty to set aside such determination, because on the record we think we might or would have reached a different conclusion. We have only to find that the inspectors acted within the scope of their authority, and that the integrity of their proceedings is not impeached. We have no jurisdiction to correct their mistakes, if any, in finding as a fact that all the relators belonged to classes which * * * are excluded from admission into the United States."

It is thus apparent that as the Department of Labor had undoubted jurisdiction to inquire whether Yee Kong was lawfully within the United States when he was taken into custody, and as its decision upon the merits of this question was not subject to review, the court below was not justified in considering and passing upon the evidence as if the case were before it on appeal under the earlier statutes relating to Chinese persons.

But, although a court is bound by the findings of fact made by the immigration officials in such an inquiry, nevertheless it may still in-

quire on habeas corpus into the fairness of the proceeding. In Loh Wah Suey v. Backus, 225 U. S. 468, 32 Sup. Ct. 735, 56 L. Ed. 1165, a recent statement to this effect may be found:

"A series of decisions in this court has settled that such hearings before executive officers may be made conclusive when fairly conducted. In order to successfully attack by judicial proceedings the conclusions and orders made upon such hearings it must be shown that the proceedings were manifestly unfair, that the action of the executive officers was such as to prevent a fair investigation or that there was a manifest abuse of the discretion committed to them by the statute. In other cases the order of the executive officers within the authority of the statute is final. United States v. Ju Toy, 198 U. S. 253 [25 Sup. Ct. 644, 49 L. Ed. 1040]; Chin Yow v. United States, 208 U. S. 8 [28 Sup. Ct. 201, 52 L. Ed. 369]; Tang Tun v. Edsell, 223 U. S. 673 [32 Sup. Ct. 359, 56 L. Ed. 606]."

After a careful examination of the record before us we are unable to find that Yee Kong was deprived of any fundamental right, or that the order of deportation was made without evidence tending to prove that he was a laborer unlawfully within the country. The burden was on him to prove his right to be here (U. S. v. Hom Lim [C. C. A. 2d Cir.] 223 Fed. 520, —— C. C. A. ——; Ng Jin v. U. S., 223 Fed. 426, —— C. C. A. ——), and on this point his certificate of identity was not conclusive, but was merely one item of relevant evidence (Lew Quen Wo v. U. S. [C. C. A. 9th Cir.] 184 Fed. 685, 106 C. C. A. 639). Testimony tending to show that he was not a student, but a laborer, was offered, and we have nothing to do with its weight. It is true the proceeding was not conducted in all respects as if a trial in court had been in progress, but this was not necessary. The act of 1907 contemplates a summary investigation, and not a judicial trial, and while an alien's right to be heard must be respected, and the discretion of the officials must not be abused, the formalities of procedure and the rules governing the admissibility of evidence have been much relaxed. U. S. v. Uhl (C. C. A. 2d Cir.) 215 Fed. 573, 131 C. C. A. 641; Choy Gum v. Backus (C. C. A. 9th Cir.) 223 Fed. 492, —— C. C. A. ——. We do not find anything fatally erroneous in the present record. The alien had counsel from the beginning, and had the opportunity to call such witnesses as he wished or was able to produce. The act does not provide for process to compel the appearance of witnesses (Loh Wah Suey v. Backus, 225 U. S. 460, 32 Sup. Ct. 734, 56 L. Ed. 1165), and both parties were therefore obliged to rely on their attendance without compulsion. After a further hearing on March 6 the alien's counsel stated:

"We have nothing further at present, and our case may be considered closed, unless you take more testimony; in that event I desire to see it, and may want to offer more evidence."

Whereupon it was "agreed that if any further testimony is taken Attorney Barton should be furnished with a copy and be permitted to interview additional witnesses." Such testimony was taken early in April, and (except one affidavit) all of it was taken in the presence of the alien. His counsel was not present, but a full copy was furnished him in accordance with the agreement, and he made no offer to call any witnesses in reply. Neither does he allege that the testimony

laid before the Department is false in any essential particular; practically the sole ground of attack is that the Department should have come to a different conclusion, and this ground, we repeat, was not open in the court below, and is not open here. We need not notice two or three objections of minor importance.

The order appealed from is reversed, with instructions to remand the alien.

⬡⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes